## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. GRESS and BRANDY L. GRESS and on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br> v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>     Defendant. | Case No.<br><br>**COMPLAINT -- CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Michael J. Gress and Brandy L. Gress ("Plaintiffs"), on behalf of themselves and all others similarly situated, through the undersigned attorneys, file this Class Action Complaint against defendant Freedom Mortgage Corporation ("Defendant" or "Freedom Mortgage"), and allege the following:

### NATURE OF THE ACTION

1. Defendant is one of the largest mortgage lenders in the United States. It knowingly engages in a broad scheme to collect impermissible and unlawful fees from borrowers.

2. Specifically, after borrowers fall behind on their mortgage payments, Defendant orders property inspections and assesses fees for these property inspections. However, these inspections often serve no purpose and borrowers are needlessly charged additional amounts.

3.    Defendant's conduct violates the express terms of the mortgage agreements signed by Plaintiffs and by members of the putative class.  Those mortgage agreements preclude the assessment of fees for post-default services that are not "reasonable or appropriate."  Assessing fees for property inspections that serve no purpose is not reasonable or appropriate.

4.    This conduct also constitutes an unfair or deceptive act under both the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Pennsylvania Fair Credit Uniformity Act.

5.    Plaintiffs bring this action seeking injunctive relief and damages on behalf of themselves and the hundreds of thousands of borrowers who have been victimized by Defendant's uniform practice of charging for unreasonable and inappropriate property inspection fees.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because (a) the number of members of all proposed plaintiff classes in the aggregate is greater than 100, (b) a member of a class of plaintiffs is a citizen of a State different from Defendant, and (c) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.

7.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated.

## PARTIES

8.     Plaintiffs Michael J. Gress and Brandy L. Gress are residents of Mercersburg, Pennsylvania and citizens.

9.     According to the State of New Jersey's Division of Revenue and Enterprise Services, Defendant Freedom Mortgage Corporation is a for-profit corporation incorporated under the laws of New Jersey with its principal place of business in Mt. Laurel, New Jersey.

## FACTS

**Defendant Engages In A Broad Scheme
To Collect Unlawful Fees From Its Borrowers.**

10.     Defendant is one of the largest mortgage lenders in the United States.

11.     When Defendant enters into mortgage agreements with borrowers, it provides the borrowers with form mortgage agreements that contain substantially the same language and terms.

12.     Among other things, these form agreements provide that, in the event of default, Defendant may assess fees against a borrower only for services that are "reasonable or appropriate."

13.     Yet, on a uniform nationwide basis, Defendant systematically assesses and collects fees for property inspections that are not reasonable or appropriate under

the circumstances.

14.    Defendant indiscriminately orders property inspections and assesses fees for those inspections without regard for whether those inspections are reasonable or appropriate.

15.    Indeed, Defendant possesses information demonstrating when particular inspections are not reasonable or appropriate, but ignores that information and orders inspections anyway.

16.    Defendant ignores that information because it would interfere with its collection of improper fees.

17.    To reduce costs, Defendant automates the ordering and performance of property inspections.

18.    Defendant's computer system automatically searches for accounts that have been in default for a particular period of time and orders property inspections of the mortgaged properties.

19.    The only factor that the computer system considers when ordering a property inspection is the length of time an account has been in default.

20.    The computer system does not consider any other factors and does not review any other information.

21.    The computer system does not consider whether a property inspection is reasonable or appropriate under the circumstances.

22.     The computer system does not consider whether a property inspection or associated fee is permitted under the borrower's mortgage agreement.

23.     The computer system compiles lists of accounts in default and automatically sends the lists to outside vendors that perform property inspections.

24.     The only allowable purpose of a property inspection is to determine whether a property has been abandoned.

25.     The inspector drives by the property to determine whether it has been abandoned.

26.     The vendors that perform the inspections then electronically send inspection reports back to Defendant's computer system.

27.     Few, if any, inspection reports are actually read by humans.

28.     Property inspections are performed even where Defendant knows or should know beforehand that a property has not been abandoned.

29.     Property inspections performed where Defendant knows or should know beforehand that a property has not been abandoned are not reasonable or appropriate.

30.     Many circumstances demonstrate that a property has not been abandoned and the borrower does not intend to abandon the property.  These circumstances include: payments (including partial payments) made after the default; communications between Defendant and a borrower in which the borrower

indicates an intent not to abandon the premises or an intent to become current on the loan; and efforts to obtain a loan modification or other loan mitigation relief.

31.    Defendant maintains information in its account records regarding such payments (including partial payments) made after the default; communications between Defendant and a borrower in which the borrower indicates an intent not to abandon the premises or an intent to become current on the loan; and efforts to obtain a loan modification or other loan mitigation relief.

32.    None of this information is considered before a property inspection is ordered.

33.    This automated computer system continues to order inspections of the same properties—often on a monthly basis—until the borrower becomes current on the loan.

34.    It also is unreasonable and inappropriate to assess property inspection fees indiscriminately, without regard for whether they are reasonable or appropriate.

35.    Defendant intentionally and willfully engages in this scheme to collect fees that it knows it may not lawfully collect.  As part of this scheme, Defendant conceals this scheme and makes false and misleading representations to maintain the scheme.

36.    When entering into a mortgage agreement, Defendant presents a borrower with an agreement providing that, in the event of a default, no unreasonable

or inappropriate fees will be assessed.   However, at that time, Defendant knows that it will not comply with that provision, but will have the computer system automatically order inspections and assess fees without regard for reasonableness or appropriateness.

37.    Reasonable borrowers would believe that an agreement barring fees that are not reasonable or appropriate means just that.

38.    Defendant conceals the truth about the automated inspection process from its borrowers.

39.    After fees for property inspections have been assessed, Defendant lists those fees in borrowers' periodic statements.

40.    When a reasonable borrower sees such a charge, that borrower would have no reason to believe that the fee was for an unreasonable or inappropriate service, or a service that was performed without regard for whether it was reasonable or appropriate, and without regard for whether it was permitted under the borrower's mortgage agreement.

41.    Defendant knowingly sends out these statements as part of its deceptive and unfair scheme to increase its profits.

42.    The statements also misstate the amount of borrowers' indebtedness because the fees should not have been assessed and result in an improper inflation of the amount of indebtedness.

43.    The statements also misstate the amount of borrowers' indebtedness because payments that are applied to the improper inspection fees should have been applied to pay down principal and interest, which continue to accrue interest.

44.    As a result of this scheme, borrowers pay more than they are legally obligated to pay.  They pay these unlawful fees and they pay extra interest that continues to accrue on principal and interest that would have been paid down with the amounts applied to the property inspection fees.

45.    Defendant also has substantial leverage over its borrowers.  If a borrower fails to pay these unlawful property inspections, the borrower risks losing his or her home.  Payments by borrowers on these fees are thus made under duress.

46.    Defendant also assesses property inspection fees to borrowers before paying the vendors that perform the inspections, thereby generating additional profits through "float" income.

47.    Every month, borrowers are assessed fees for property inspections that are not reasonable or appropriate and that violate the terms of their mortgage agreements.

48.    As one court found:

[Lender] argues that the decision to conduct drive-by inspections every time a loan is twenty (20) days past due is reasonable. . . . [Lender] requests blanket authority to charge every debtor or borrower a fee for a drive-by inspection no matter what the circumstances, provided, in [Lender's] view, the loan is twenty (20) days past due. While this might seem both logical and practical at first blush, in practice it is much less

so. . . . In short, the Court concludes that [Lender's] computer system automatically generates these inspections for no discernable purpose or benefit to the lender.

*In re Stewart*, 391 B.R. 327, 342-44 (Bankr. E.D. La. 2008), *aff'd*, 08-3225, 2009 WL 2448054 (E.D. La. Aug. 7, 2009), *vacated in part, appeal dismissed in part*, 647 F.3d 553 (5th Cir. 2011).

49.     When borrowers fall behind on their loan payments, and fees for these default-related services are stacked on to the past-due principal and interest payments, Defendant's practices make it increasingly more difficult for borrowers to bring their loans current.

**Defendant Charged Plaintiffs For
Unreasonable And Inappropriate Property Inspection Fees**

50.     On or about May 30, 2017, Plaintiffs purchased a home in Mercersburg, Pennsylvania.  On that date, they executed a mortgage agreement mortgaging the property (the "Mortgage").

51.     Plaintiffs' mortgage lender was Residential Mortgage Services, Inc. Plaintiffs' loan was later assigned to Defendant.

52.     At all relevant times, Defendant has serviced Plaintiffs' mortgage and continues to do so.

53.     The Mortgage is a form instrument issued by Fannie Mae and Freddie Mac for use with the mortgaging of single family homes in Pennsylvania.

54.     Fannie Mae and Freddie Mac issue substantially similar form

instruments for all 50 states and the District of Columbia.

55.     Defendant utilizes such Fannie Mae and Freddie Mac form instruments for residential mortgages in the United States.

56.     The Mortgage provides that:

If (a) Borrower fails to perform the covenants and agreements contained in this Security Agreement, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Agreement (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for *whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Agreement*, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. (Emphasis added).

57.     Substantially similar language appears in the Fannie Mae and Freddie Mac form instruments for each state and the District of Columbia.

58.     Plaintiffs suffered financial difficulties, which caused them to miss a mortgage payment in 2017.

59.     Despite falling behind, Plaintiffs thereafter made monthly payments on or about October 31, 2017, November 30, 2017, January 6, 2018, and February 21, 2018.

60.     Throughout this time, Plaintiffs communicated with Defendant regarding the default.  During those communications, Plaintiffs made clear that they intended to become current on the mortgage, that they continued to occupy the

property, and that they had no intention of abandoning the property.

61.     Based on payments made after the default, as well the communications between Plaintiffs and Defendant, Defendant knew, or should have known, that Plaintiffs' property had not been abandoned and that Plaintiffs did not intend to abandon the property.

62.     Nevertheless, on or before February 21, 2018, Defendant ordered a property inspection to be performed on Plaintiff's property.

63.     Defendant assessed a fee of $15 against the Plaintiffs for the property inspection on or about February 21, 2018.

64.     The property inspection and fee were not reasonable or appropriate.

65.     The property inspection did nothing to protect Defendant's interest in the property or its rights under the Mortgage.

66.     Plaintiff's paid that $15 fee on or about March 31, 2018.

67.     Plaintiffs continued to make monthly payments on or about March 31, 2018, April 30, 2018, May 31, 2018, and June 30, 2018.

68.     Plaintiffs them suffered further financial difficulties.  These included unexpected costs that were incurred when their air conditioning and heating unit ceased working.  Mr. Gress also suffered from medical problems that required surgery.

69.     Plaintiffs missed a mortgage payment due on August 1, 2018 and then

belatedly made a mortgage payment on September 14, 2018 that had been due on September 1, 2018.

70.     Again, Plaintiffs communicated with Defendant regarding the defaults. During those communications, again, Plaintiffs made clear that they intended to become current on the mortgage, that they continued to occupy the property, and that they had no intention of abandoning the property.

71.     Plaintiffs and Defendant also discussed potential loan mitigation options that might be available, including a loan modification.

72.     On or about October 10, 2018, Plaintiffs send Defendant a formal loan modification application.

73.     Based on the communications between Plaintiffs and Defendant, as well as the loan mitigation application Defendant knew or should have known that Plaintiffs' property had not been abandoned and that Plaintiffs did not intend to abandon the property.

74.     Nevertheless, Defendant ordered three more property inspections.

75.     Fees for these property inspections were assessed in the amount if $15 on or about August 21, 2018, October 1, 2018, and October 31, 2018.

76.     These property inspections and fees were not reasonable or appropriate.

77.     The property inspections did nothing to protect Defendant's interest in the property or its rights under the Mortgage.

78.    All three of these property inspection fees were paid on or about February 7, 2019.

79.    Each month, Plaintiffs received account statements from Defendant.

80.    These statements included fees for property inspections that Defendant knew it may not assess.  These statements also misstated the amounts owed by Plaintiffs on their mortgage because the listed amounts included property inspection fees that could not be lawfully assessed.

81.    Plaintiffs, like any reasonable consumer, had no idea that these fees were unlawful, unreasonable, or inappropriate.  They had no idea that these fees were assessed without regard for whether they were reasonable or appropriate and without regard for whether they were permitted under Plaintiffs' Mortgage.

82.    Thousands of other borrowers across the country are also being charged the same type of unlawful property inspection fees by Defendant.

83.     All conditions precedent to all alleged claims for relief have occurred or been performed.

## CLASS ACTION ALLEGATIONS

84.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action against Defendant as a class action on behalf of themselves and all members of the following class:  All mortgagors in the United States of a mortgage entered into, assigned to, owned by, or serviced by Freedom Mortgage, who were charged a fee for property

inspections (the "National Class").

85.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action against Defendant as a class action on behalf of themselves and all members of the following class:   All mortgagors in Pennsylvania of a mortgage entered into, assigned to, owned by, or serviced by Freedom Mortgage, who were charged a fee for property inspections (the "Pennsylvania Class").

86.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action against Defendant as a class action on behalf of themselves and all members of the following class:  All mortgagors in California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, or Washington of a mortgage entered into, assigned to, owned by, or serviced by Freedom Mortgage, who were charged a fee for property inspections (the "Multi-State Class").

87.    All of the members of the National Class, Pennsylvania Class, and the Multi-State Class are collectively referred to as the "Class" or "Class Members."

88.    Plaintiffs reserve the right to modify or amend the Class definitions before the Court determines whether class certification is appropriate.

89.    Excluded from the Class are: (i) Defendant and any entities in which Defendant has a controlling interest; (ii) any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (iii) the Judge to whom this case is assigned and

any member of the Judge's immediate family and any other judicial officer assigned to this case; and (iv) all governmental entities.

90.    The members of the Class are so numerous that their joinder is impracticable.

91.    All members of the Class have been subject to and affected by the same practices and policies described herein.  There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class.  These questions include, but are not limited to, the following:

        a.    Whether Defendant engaged in a uniform practice of deceptively and unfairly assessing fees against borrowers for services that were unreasonable an inappropriate;

        b.    Whether Defendant engaged in a uniform practice that violated the terms of uniform mortgage agreements;

        c.    Whether Defendant's unlawful, deceptive, and unfair practices harmed Plaintiffs and the Class;

        d.    Whether the Court can enter declaratory and injunctive relief; and

        e.    The proper measure of damages.

92.    The claims of the named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that the

Plaintiffs and the other members of the Class were subject to the same wrongful policies and practices by Defendant.

93.    The named Plaintiffs will fairly and adequately represent the interests of the proposed Class.  They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions.

94.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class.

95.    The Defendant has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

96.    The Class is easily ascertainable as Defendant's computerized records can identify all mortgagors who paid property inspections, and can identify all property inspections that were unreasonable or inappropriate.

97.    The questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

98.    Notice to the proposed Class can be achieved through the United States mail to the addresses of the Class members that are kept within Defendant's records.

99.    A class action is superior to other available methods for the fair and

efficient adjudication of the controversies herein in that:

> a.     Individual claims by the members of the Class are impractical as the costs of litigation far exceed what any one individual plaintiff has at stake;

> b.     Individual members of the Class have little no interest in prosecuting and controlling separate actions;

> c.     It is desirable to concentrate litigation of the claims herein in a single forum; and

> d.     The proposed Class is manageable.

100.   Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Breach of Contract**
**On Behalf Of The National Class And The Pennsylvania Class**

101.   Plaintiffs repeat and reallege all the foregoing allegations as if they were fully set forth herein.

102.   Plaintiffs and members of the Class entered into mortgage agreements with substantially similar language providing that Defendant would charge only for default-related services like property inspections that are "reasonable or appropriate."

103.   Defendant breached these mortgage agreements by assessing fees against Plaintiffs and the Class members for property inspections that were not reasonable or appropriate.

104.   As a result of this breach of contract, Defendant has caused and continues to cause injury to Plaintiffs and the Class members who were assessed fees for property inspections that were not reasonable or appropriate.

105.   Defendant also has breached its duty of good faith and fair dealing.

106.   Mortgagors like Plaintiffs reasonably expected that Defendant would use discretion with respect to ordering and charging for property inspections in good faith and would only order such inspections when they were reasonable or appropriate.  But Defendant frustrated those expectations by using no discretion.

107.   Instead, it ordered property inspections using an automated system.

108.   As a result of the foregoing, Plaintiffs and the Class members are entitled to their actual damages.

109.   Plaintiffs and the Class members also are entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

## SECOND CLAIM FOR RELIEF
**Violation Of Materially Identical State Consumer Protection Statutes
On Behalf Of The Multi-State Class**

110.  Plaintiffs repeat and reallege all the foregoing allegations as if they were fully set forth herein.

111.  Plaintiffs and Class members were charged for property inspections that were not reasonable or appropriate.

112.  Plaintiffs and Class members were charged for property inspections without regard for whether they were reasonable or appropriate.

113.  Defendant has engaged in fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding.

114.  Defendant knowingly misrepresented and intentionally omitted material information regarding the nature of the fees that would be assessed to borrowers' accounts, including property inspections.

115.  Despite knowledge that property inspections were unreasonable and inappropriate, and were ordered without regard for whether they are reasonable or appropriate, Defendant concealed the fact that defaulting borrowers would be automatically and repeatedly charged for such services.

116.  Defendant acted deceptively by presenting borrowers with mortgage agreements that misleadingly and deceptively indicate that borrowers will not be charged for unreasonable and inappropriate services.

117.   Defendant did so, despite knowledge that borrowers in default would be automatically and repeatedly charged without regard for whether a property inspection was reasonable or appropriate.

118.   Defendant's unfair and deceptive acts or practices would deceive reasonable consumers into believing that they would only be charged for only reasonable or appropriate property inspections.

119.   Regardless of the terms of any applicable mortgage agreement, Defendant also engaged in fraudulent and deceptive conduct by engaging in a practice of automatically and repeatedly assessing fees for property inspections against borrowers in default without regard to, or consideration of, whether those services were reasonable or appropriate.

120.   Defendant did so through an automated computer system that looked only to whether an account was in default, and did not consider whether a property inspection would otherwise be reasonable or appropriate.

121.   The property inspection fees are listed in borrowers' periodic statements.  When reasonable borrowers receive these statements, they have no reason to believe that they have been charged for services that are not reasonable or appropriate, or that have been performed without regard for whether they are reasonable or appropriate.  Nothing in the statements indicates that borrowers had been charged for services that are not reasonable or appropriate or were performed

without regard for whether they are reasonable or appropriate.

122.    Defendant's conduct directly, foreseeably and proximately caused Plaintiff and the Multi-State Class to suffer an ascertainable loss.

123.    The practices discussed above all constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:

a.    **California Consumer Legal Remedies Act,** Cal. Civ. Code § 1750, *et seq*.;

b.    **California Unfair Competition Law,** Cal. Bus. & Prof. Code § 17200, *et seq*.;

c.    **Florida Deceptive and Unfair Trade Practices Act,** Fla. Stat. § 501.201, *et seq.*;

d.    **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

e.    **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*;

f.    **Michigan Consumer Protection Act,** Mich. Comp. Laws § 445.901 *et seq.*;

g.    **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*;

h.    **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*;

i.    **North Carolina Unfair and Deceptive Trade Practices Act,** N.C. Gen. Stat. § 75-1.1(a);

    j.    **Ohio's Consumers Sales Practice Act,** Ohio Revised Code § 1345, *et seq.*;

    k.    **Pennsylvania Unfair Trade Practices and Consumer Protection Law**, 73 P.S. §§ 201-1, *et seq.*;

    l.    **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*

124.   Plaintiffs and Class members are entitled to their actual damages and all other statutory and punitive damages available under these state consumer protection statutes.

125.   Plaintiffs and Class members are further entitled to their costs and reasonable attorney fees.

Plaintiffs and Class members are also entitled to an order enjoining Defendant's unfair, unlawful, and deceptive practices, declaratory relief, and any other necessary or proper relief available under these state consumer protection statutes.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Violation Of The Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 P.S. §§ 201-1, *et seq.*)**
**On Behalf Of The Pennsylvania Class**

126.   Plaintiffs repeat and reallege all the foregoing allegations as if they were fully set forth herein.

127.   Plaintiffs bring this action on behalf of herself and the Pennsylvania Class against Defendant.

128.    The Pennsylvania Consumer Protection Act prohibits "unfair or deceptive acts or practices."  73 P.S. § 201-2(4).

129.    Plaintiffs and all Class members are "persons" within the meaning of 73 P.S. § 201-2(2).

130.    Defendant is a "person" within the meaning of 73 P.S. § 201-2(2).

131.    Plaintiffs and Class members were charged for property inspections that were not reasonable or appropriate.

132.    Plaintiffs and Class members were charged for property inspections without regard for whether they were reasonable or appropriate.

133.    Defendant has engaged in fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding.

134.    Defendant knowingly misrepresented and intentionally omitted material information regarding the nature of the fees that would be assessed to borrowers' accounts, including property inspections.

135.    Despite knowledge that property inspections were unreasonable and inappropriate, and were ordered without regard for whether they are reasonable or appropriate, Defendant concealed the fact that defaulting borrowers would be automatically and repeatedly charged for such services.

136.    Defendant acted deceptively by presenting borrowers with mortgage agreements that misleadingly and deceptively indicate that borrowers will not be

charged for unreasonable and inappropriate services.

137.   Defendant did so, despite knowledge that borrowers in default would be automatically and repeatedly charged without regard for whether a property inspection was reasonable or appropriate.

138.   Defendant's unfair and deceptive acts or practices would deceive reasonable consumers into believing that they would only be charged for only reasonable or appropriate property inspections.

139.   Regardless of the terms of any applicable mortgage agreement, Defendant also engaged in fraudulent and deceptive conduct by engaging in a practice of automatically and repeatedly assessing fees for property inspections against borrowers in default without regard to, or consideration of, whether those services were reasonable or appropriate.

140.   Defendant did so through an automated computer system that looked only to whether an account was in default, and did not consider whether a property inspection would otherwise be reasonable or appropriate.

141.   The property inspection fees are listed in borrowers' periodic statements.   When reasonable borrowers receive these statements, they have no reason to believe that they have been charged for services that are not reasonable or appropriate, or that have been performed without regard for whether they are reasonable or appropriate.  Nothing in the statements indicates that borrowers had

been charged for services that are not reasonable or appropriate or were performed without regard for whether they are reasonable or appropriate.

142.   Defendant committed further unfair and deceptive acts and practices by violating the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq*.

143.   Defendant is a "creditor" within the meaning of 73 P.S. § 2270.3.

144.   Plaintiffs are "consumers" within the meaning of 73 P.S. § 2270.3.

145.   Defendant violated 73 P.S. § 2270.4(b)(6)(i) by collecting and attempting to collect an amount, including any interest, fee, charge or expense incidental to the principal obligation, that is not expressly authorized by the agreement creating the debt or permitted by law.

146.   Defendant has collected fees from Plaintiffs and Class members for property inspections that were not reasonable or appropriate, and are not permitted under their mortgage agreements.

147.   Defendant violated 73 P.S. § 2270.4(b)(5)(ii) by making false representations of the character, amount or legal status of any debt.

148.   Defendant has falsely represented the amounts owed by Plaintiffs and Class members by inflating debts to include unlawful property inspection fees that Plaintiffs and Class members were not obligated to pay.

149.   Defendant has falsely represented that the fees it charges to Plaintiffs

and Class Members for property inspections are reasonable and appropriate when they are not.

150.   Defendant has falsely represented that the fees it charges to Plaintiffs and Class Members for property inspections are legally permissible when they are not.

151.   Plaintiffs and Class members are entitled to actual damages or one hundred dollars ($100), whichever is greater.  Plaintiffs and Class members are further entitled to have their actual damages trebled to an amount of not less than one hundred dollars ($100).

152.   Plaintiffs and Class members are further entitled to their costs and reasonable attorney fees.

153.   Plaintiffs and Class members are also entitled to an order enjoining Defendant's unfair, unlawful, and deceptive practices, declaratory relief, and any other necessary or proper relief available under the Pennsylvania Consumer Protection Act.

## FOURTH CLAIM FOR RELIEF
### Violation of the Pennsylvania Fair Credit Extension Uniformity Act
### (73 P.S. § 2270.1, *et seq*.)
### On Behalf Of The Pennsylvania Class

154.   Plaintiffs repeat and reallege all the foregoing allegations as if they were fully set forth herein.

155.   Defendant is a "creditor" within the meaning of 73 P.S. § 2270.3.

156.    Plaintiffs are "consumers" within the meaning of 73 P.S. § 2270.3.

157.    Defendant violated 73 P.S. § 2270.4(b)(6)(i) by collecting and attempting to collect an amount, including any interest, fee, charge or expense incidental to the principal obligation, that is not expressly authorized by the agreement creating the debt or permitted by law.

158.    Defendant has collected fees from Plaintiffs and Class members for property inspections that were not reasonable or appropriate, and are not permitted under their mortgage agreements.

159.    Defendant violated 73 P.S. § 2270.4(b)(5)(ii) by making false representations of the character, amount or legal status of any debt.

160.    Defendant has falsely represented the amounts owed by Plaintiffs and Class members by inflating debts to include unlawful property inspection fees that Plaintiffs and Class members were not obligated to pay.

161.    Defendant has falsely represented that the fees it charges to Plaintiffs and Class Members for property inspections are reasonable and appropriate when they are not.

162.    Defendant has falsely represented that the fees it charges to Plaintiffs and Class members for property inspections are legally permissible when they are not.

163.    Plaintiffs and Class members are entitled to actual damages or one

hundred dollars ($100), whichever is greater. Plaintiffs and Class members are further entitled to have their actual damages trebled to an amount of not less than one hundred dollars ($100).

164.   Plaintiffs and Class members are further entitled to their costs and reasonable attorney fees.

165.   Plaintiffs and Class members are also entitled to an order enjoining Defendant's unfair, unlawful, and deceptive practices, declaratory relief, and any other necessary or proper relief available under the Pennsylvania Fair Credit Extension Uniformity Act.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**On Behalf Of The Pennsylvania Class**

166.   Plaintiffs repeat and reallege all the foregoing allegations as if they were fully set forth herein.

167.   Plaintiffs and the members of the Classes conferred a benefit upon Defendant in the form of fees for unreasonable and inappropriate property inspections and any interest accruing on such fees.

168.   Defendant received this benefit with an appreciation or knowledge of the benefit.

169.   Defendant accepted and retained the benefit under circumstances that make it inequitable for Defendant to retain the benefit.

170.   Defendant was unjustly enriched.

171.   As a direct and proximate result of Defendant's unjust enrichment Plaintiffs and Class members have suffered injury-in-fact and/or actual damages.

172.   This unjust enrichment also includes float income received by Defendant where Defendant assessed the unlawful property inspection fees prior to paying vendors that performed property inspections.

173.   This float income is distinct from unlawful fees paid by Plaintiffs and the Class members.

174.   As a result, Plaintiffs and the Class members are entitled to a disgorgement of all amounts by which Defendant has been unjustly enriched, together with their actual damages, punitive damages, reasonable attorney's fees and costs, and injunctive, declaratory, and equitable relief barring future unlawful conduct by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the other Class members, respectfully request that the Court enter judgment against Defendant as follows:

A.   Certifying this action as a class action, with classes as defined above;

B.   Requiring that Defendant pay for notifying the Class members of the pendency of this suit;

C.     Awarding Plaintiffs and the Class all injunctive, declaratory, and equitable relief to which they are entitled;

D.     Awarding Plaintiffs and the Class monetary damages in an amount to be determined at trial, together with pre and post-judgment interest;

E.     Awarding Plaintiffs and the Class statutory damages in the maximum amount provided by law;

F.     Awarding Plaintiffs and the Class members the reasonable costs and expenses, including their attorneys' fees; and

G.     Granting such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all claims for relief in this action.

Dated:  March 4, 2019                 Respectfully submitted,

By:   *s/ Gary F. Lynch*
Gary F. Lynch
Edwin J. Kilpela (admission pending)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com
ekilpela@carlsonlynch.com

D. Greg Blankinship (*pro hac vice* forthcoming)
Todd S. Garber (*pro hac vice* forthcoming)
Bradley F. Silverman (*pro hac vice* forthcoming)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Telephone:  (914) 298-3281
Fax:  (914) 908-6709
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

Matt Schultz (*pro hac vice* forthcoming)
Bill Cash (*pro hac vice* forthcoming)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 South Baylen St.
Pensacola, FL 32502
(850) 435-7140
mschultz@levinlaw.com
bcash@levinlaw.com

*Counsel for Plaintiffs*