## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. GRESS and BRANDY L. GRESS, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:19-cv-00375-RDM |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | |
| FREEDOM MORTGAGE CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT
## AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

I.     Introduction and overview. ...........................................................................1

II.    Summary of the settlement benefits. ............................................................3

III.   Legal standards applicable to this class action settlement. ...........................7

IV.    The proposed settlement merits preliminary approval. ...............................10

    A.    Rule 23(e)(2)(A): Adequate representation.........................................10

    B.    Rule 23(e)(2)(B): Arm's length negotiation. ...................................... 11

    C.    Rule 23(e)(2)(C): Adequate relief for the class in light of the facts.....12

    D.    Rule 23(e)(2)(D): Equitable treatment of class members. ..................19

V.     The Court should conditionally certify the class for settlement.................. 20

    A.    Rule 23(a)(1): Numerosity. ................................................................ 20

    B.    Rule 23(a)(2): Common questions of fact or law. .............................. 20

    C.    Rule 23(a)(3): Typicality. ...................................................................21

    D.    Rule 23(a)(4): Adequate representation. ........................................... 22

    E.    Rule 23(b)(3): Predominance and superiority of adjudication
          as a class.......................................................................................... 22

    F.    Rule 23(b)(3): Inherent ascertainability requirement. ........................24

VI.    The Court should appoint Plaintiffs' counsel as class counsel. ....................24

VII.   The Court should approve the proposed notice plan. ..................................25

VIII.  Conclusion and relief sought. ..................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Bellum v. Law Offs. of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 3. 2016) ...................................................................... 11

*Boeynaems v. L.A. Fitness Int'l, LLC*, No. 10-2326, 2013 WL 12147637 (E.D. Pa. Sept. 27, 2013)............................................................................................................27

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)...........................16

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) .....................................................24

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .........................................7

*Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 316722 (E.D. Pa. Jan. 24, 2019) .............................................................................................................................23

*Gates v. Rohm and Haas Co.*, 248 F.R.D 434 (E.D. Pa. 2008) .................................23

*Giercyk v. Nat'l Union fire Ins. Co. of Pittsburgh, PA*, No. 13-6272, 2016 WL 7209649 (D.N.J. Oct. 13, 2016)..............................................................................................27

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .....................................................passim

*Halley v. Honeywell Int'l., Inc.*, 861 F.3d 481 (3d Cir. 2017) .......................................7

Hayes v. Wal–Mart Stores, Inc., *725 F.3d 349 (3d Cir. 2013)* ...................................24

*In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013) ...........................17

*In re Gen. Mot. Corp. Litig.*, 55 F.3d 768 (3d Cir. 1995).........................................7, 17

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.2d 410 (3d Cir. 2016)............................................................................................................................ 22

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) 9, 10, 23

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) ............................................................................................................................ 8

*McRobie v. Credit Protection Assoc.*, No. 5:18-cv-00566 (E.D. Pa. Nov. 20, 2020)....19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)..21

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................... 20

*Teh Shou Kao v. CardConnect Corp.*, No. 16-5707, 2021 WL 698173 (E.D. Pa. Feb. 23, 2021) ................................................................................................................27

*Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144 (E.D. Pa. Jan. 7, 2021) . 14

*Udeen v. Subaru of Am., Inc.*, No.18-17334, 2019 WL 4894568 (D.N.J. Oct. 4, 2019) ................................................................................................................................27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)............................................... 20

**Other Authorities**

Manual for Complex Litigation § 21.632 ................................................................. 9

**Rules**

Fed. R. Civ. P. 23......................................................................................passim

**Treatises**

Newberg on Class Actions § 11.25.......................................................................... 9

## I.   Introduction and overview.

The Plaintiffs, Brandy and Michael Gress, and Freedom Mortgage Corporation, have reached an Agreement, Ex. A, which if approved by the Court, would resolve this litigation and provide substantial relief to tens of thousands of borrowers. Plaintiffs seek preliminary approval of the Agreement and other related relief.

Throughout this case, the Plaintiffs have alleged that Freedom charges customers for unnecessary property inspections in violation of their mortgage agreements and consumer protection laws. For example, the Gresses were made to pay four times to have their home inspected, just to afford Freedom peace of mind that it was still occupied and being maintained—even though the Gresses were in regular contact with Freedom about staying current on their loan and seeking to make partial payments. Discovery showed that Freedom did not observe its own policies when its computers ordered up repeat property inspections. Repeat property inspections, where a property is already known to be occupied, are a waste of money, a breach of the terms of a standard mortgage, and a practice constituting consumer fraud.

Freedom generally denies any wrongdoing or that is liable in this case, disputes many of the key facts which provide the basis for Plaintiffs' claims, and has

raised various defenses and objections. Among them, Freedom argued it has the contractual right to order inspections of borrowers' properties, pointing to language in the mortgage in support. Freedom also argued that the Court did not have jurisdiction to hear claims of non-Pennsylvanians. Finally, Freedom disputed the Gresses' allegations that inspection reports aren't read by humans and lack sufficient detail on which Freedom could make any business decision.

The Agreement the parties reached ends these arguments and resolves very hard-fought litigation. As the Court knows, the Gresses prevailed against Freedom's motion to dismiss, but Freedom was initially successful in seeking interlocutory review from the Third Circuit, and some of the issues it raised were not reached. The parties also had vigorous disputes over the scope and schedule of discovery productions and other matters.

The parties reached their Agreement during two all-day mediation sessions with the Hon. Jeff Kaplan (Ret.) in December 2020 and January 2021. (Exs. B, Blankinship Decl. ¶¶ 6–9; C, Cash Decl. ¶¶ 10–13.) While the parties agreed to specific terms in a memorandum signed after the settlement, it took additional months to finalize the actual settlement agreement, including the notice provisions, which were the subject of extended negotiations between the parties. (Ex. C ¶¶ 12–13.)

Today the Plaintiffs are pleased to bring this motion before the Court and seek preliminary approval of the Agreement, certification of a settlement class, the provision of notice to class members, and scheduling matters. The Court should preliminarily approve this settlement so that class members can enjoy real monetary relief and Freedom can have the certainty of resolution. A proposed order is attached as Ex. D.

## II.      Summary of the settlement benefits.

The Agreement requires Freedom to make available $2,700,885.74 to the class, which Freedom says contains 74,196 members. As a claims-made settlement, Freedom will make a payment to each eligible class member who claims one. This Agreement affords substantial relief to the class, which is defined as "all borrowers in the United States whose Mortgages were or are serviced by Freedom and who paid money to Freedom for fees on property inspections conducted on their property due to the borrower defaulting or being delinquent . . . between March 5, 2013 and December 31, 2020." (Ex. A ¶ 1(f).) There are certain exclusions to the class definition as well. *Id*.

Under the Agreement, each class member who paid a property inspection fee and submits a valid, timely claim will receive:

- 35% of the first fee paid; and

- 50% of each additional fee paid.

(Ex. A ¶ 9.)

The refund structure is based on an argument that "first" inspections are more reasonable than subsequent inspections of the same property.

Here is a statistical breakdown of class members' available awards:

| | |
|---|---|
| Highest award | $625.25 |
| 99th percentile | $227.75 |
| 98th percentile | $187.75 |
| 97th percentile | $165.25 |
| 96th percentile | $148.75 |
| 95th percentile | $137.75 |
| 90th percentile | $97.75 |
| 80th percentile | $58.75 |
| **Average amount** | **$36.40** |
| 70th percentile | $35.25 |
| 60th percentile | $21.25 |
| **50th percentile Median amount** | **$12.75** |
| 40th percentile | $8.75 |
| 30th percentile | $7.00 |
| 20th percentile | $5.25 |
| 10th percentile | $5.25 |
| 5th percentile | $5.25 |
| 4th percentile | $5.25 |
| 3rd percentile | $5.25 |
| 2nd percentile | $5.25 |
| 1st percentile | $5.25 |
| Lowest award | $0.0035 |

(Source: Data provided by Freedom.)

Generally, Freedom assessed fees of $15 for each property inspection. As shown in the table above, one borrower was assessed dozens of fees and will be eligible to claim as much as $625.25, while thousands more borrowers also paid multiple fees and will be eligible for awards exceeding $100. At the lower end, the awards of $5.25 generally indicate borrowers who paid a single $15 late fee ($15 × 35% = $5.25). While these amounts may seem low, such borrowers paid comparatively less in property inspection fees and therefore are entitled only to a modest refund. Overall, it is a feature of this settlement that the most severely affected borrowers will receive the proportionally highest awards.

Another feature of the Agreement, which was specifically negotiated, is the clear notice plan and ease of filing a claim. In overview, the notice plan provides:

- A first-class postcard, with a postage-paid tear-off claim postcard, sent to all class members within 30 days after preliminary approval by the Court.

- A reminder notice sent to any class members who did not return the first notice. This reminder notice will be sent by first-class mail or by e-mail (if the class member provided an e-mail to Freedom).

- A web site describing the settlement and giving the ability to look up the award amount and file a claim.

- Freedom will pay for the notice plan and settlement administration.

(Ex. A, Agreement, ¶ 6.)

The Agreement also provides the Gresses with the right to seek a service award from the Court of up to $5,000, which would be paid by Freedom. *Id.* ¶ 13. The Plaintiffs expended considerable energy participating in the litigation, making discovery, directing counsel, and considering the fairness of the overall settlement. (Ex. C, Cash Decl. ¶¶ 7–9.)

In exchange for these benefits to class members, Freedom receives a release of claims related to the claims presented in this action. (Ex. A ¶ 15.) The release is tailored specifically to those claims which could have been asserted in this case in connection with property inspections or the fees paid, and it does not include unrelated claims. *Id.*

Finally, the Agreement also provides that Freedom will not oppose an award for Plaintiffs' counsel's fees and expenses, so long as the fees do not exceed $791,239 and the costs do not exceed $115,000. *Id.* ¶ 12. The Agreement recognizes that the final amount of any such award is subject to the determination of the Court. The parties did not discuss these amounts until after they had reached a conclusive agreement on the benefits payable to the class at the mediations. (Ex. B, Blankinship Decl. ¶ 9; Ex. C, Cash Decl. ¶ 11.)

### III.   Legal standards applicable to this class action settlement.

Fed. R. Civ. P. 23(e) governs judicial approval of class action settlements. It requires that a court review and approve the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement." The decision to approve a settlement is committed to the district court's "sound discretion." *Halley v. Honeywell Int'l., Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) (citation omitted).

In conducting its review, however, a district court has a "restricted, tightly focused role" which requires that court to look out for the interests of absent class members, "but that does not vest them with broad powers to intrude upon the parties' bargain." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

There is a strong presumption in favor of settlement agreements, particularly in the class action context where "substantial judicial resources can be conserved" when litigation is terminated. *In re Gen. Mot. Corp. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The presumption in favor of settlement is "particularly muscular in class action suits." *Ehrheart*, 609 F.3d at 593.

Rule 23(e)(2) sets out factors which a district court must consider at a hearing. They are:

> (A) the class representatives and class counsel have adequately represented the class;

7

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Third Circuit has also "provided guidance on the factors a court should consider in deciding whether to approve class action settlements." *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 322 (3d Cir. 2019). These factors are: the mandatory factors established in *Girsh v. Jepson*, and the factors a district court is permitted to apply, if relevant, set out in *Prudential*.

The *Girsh* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater

judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (ellipses omitted).

The optional *Prudential* factors were put forward in that case due to the "sea-change in the nature of class actions" since *Girsh* was decided in 1975. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998).

Although the *Girsh* and *Prudential* factors predate the 2018 amendments that are now found in Rule 23(e)(2), they remain in force. No matter which factors are applied, the Third Circuit has noted that "settlement approval should be a practical inquiry rooted in the particular case's facts and procedural posture." *In re Google*, 934 F.3d at 328.

At the preliminary approval stage of a settlement, a court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice may be given and a fairness hearing may be scheduled. *See* Newberg on Class Actions § 11.25 (4th ed. 2002); Manual for Complex Litigation § 21.632.

A district court must order reasonable notice be sent to a class, if the parties show that the court would likely be able to: "(i) approve the proposal under Rule

23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(1)(B).

## IV.   The proposed settlement merits preliminary approval.

Given their different vintages, the relevant legal factors—those found in Rule 23(e)(2), *Girsh*, and the optional *Prudential* factors—do overlap with each other somewhat. To give a clearer structure to this motion, the Plaintiffs discuss the Rule 23(e)(2) factors in serial below (Rule 23(e)(2)(A) through (D)). They discuss related *Girsh* factors within the appropriate sections. (The *Prudential* factors are either not particularly useful or have been essentially adopted into Rule 23 itself; therefore, they are not discussed.)

### A.   Rule 23(e)(2)(A): Adequate representation.

Rule 23(e)(2)(A) asks whether "the class representatives and class counsel have adequately represented the class."

The Plaintiffs believe they have adequately represented the class. This litigation was hard-fought. After surviving a motion to dismiss and potential interlocutory review, the Plaintiffs obtained thousands of documents and voluminous data, and conducted an extensive deposition. The Plaintiffs also engaged a team of experts in the mortgage field. All of this activity required significant efforts in terms of labor and financial resources (indeed, costs run well

into the six figures). While counsel were actively prosecuting this case, the Gresses also participated throughout. And the result speaks for itself.

This factor, adequate representation, is established.

**B.      Rule 23(e)(2)(B): Arm's length negotiation.**

Rule 23(e)(2)(B) instructs the Court to consider whether "the proposal [for settlement] was negotiated at arm's length."

Potentially relevant *Girsh* factors here may include: "(3) the stage of the proceedings and the amount of discovery completed" and "(7) the ability of the defendants to withstand a greater judgment." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (ellipses omitted).

As described in the Declarations of Blankinship and Cash (Exs. B and C, respectively), this settlement was negotiated during two separate all-day sessions under the supervision of the Hon. Jeff Kaplan, a retired federal magistrate judge (N.D. Tex.). "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offs. of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3. 2016).

Moreover, there was certainly no hint collusion between the Gresses and Freedom, who maintained a civil, professional, but antagonistic posture between them at all times during this litigation, as the docket bears out.

The "arm's length negotiation" factor is met.

### C.   Rule 23(e)(2)(C): Adequate relief for the class in light of the facts.

Under Rule 23(e)(2)(C), the Court must consider whether:

> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and

Fed. R. Civ. P. 23(e)(2)(C).

All of the *Girsh* factors are potentially relevant here, including: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

12

the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157 (ellipses omitted).

Before turning to the relevant factors, Plaintiffs submit: the clearest barometer of whether this Agreement represents an adequate recovery for the class is the gross percentage of money that will be recouped. Depending on the number of times they paid a fee, the 74,196 class members will be refunded somewhere between 35% and 50% of all the property inspection dollars they paid out.[1] That is a good recovery in most any litigation at this posture. Given the increasing costs and attendant risks of proceeding to trial, it is in fact an excellent recovery, as examination of the Rule 23 and *Girsh* factors shows.

**Complexity, expense, and duration of the litigation.** This litigation had a generally simple premise—borrowers were required to pay for useless property inspections—but proving that premise has been a complex endeavor.

Perhaps the most complex task thus far has involved processing the millions of records of data extracted by Freedom and transmitted to the Plaintiffs. Just gathering this data took almost a year. Then, linking up inspection fees paid with

---

[1] Because the first fee is refunded at 35%, it is mathematically impossible to recover exactly 50%, but borrowers who paid a fee several times over will approach that figure.

other activity, such as the state of a borrower's account (default vs. not in default) and contacts made with Freedom's customer service department, involved significant investment of time and energy. Freedom's data was incomplete and required additional processing. All of this work necessitated substantial involvement with Plaintiffs' experts, three mortgage industry professionals. To date, Plaintiffs have spent well over $100,000 in expert fees. That meter would continue running if the case continued.

Additional discovery would also be needed to take this case to a jury. Along with its structured mortgage files, Freedom produced a large amount of "unstructured" data, including e-mails and other documents. Plaintiffs would need further depositions to understand some of these documents and develop additional facts.

In sum, this has been a complex and expensive case, and Plaintiffs would incur further expenses in prosecuting this case through trial.

***Costs, risks, and delay of trial and appeal; risks of establishing liability and damages.*** These factors, from Rule 23(e)(2)(C)(i), and *Girsh* factors (4) and (5), are often analyzed together because they overlap. *E.g.*, *Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8–9 (E.D. Pa. Jan. 7, 2021).

There were substantial risks attached to establishing liability and damages,

not least of which were:

- A risk that the Court would ultimately find for Freedom in construing the contract provisions of the mortgages at issue. Freedom's position has been that it is permitted to order a property inspection any time that is necessary to preserve its stake in a property—an essentially unlimited blank check.

- A risk that Freedom would establish that—contract provisions aside—the inspections it ordered *were* reasonable under the circumstances. Plaintiffs' position has been that it was not reasonable for Freedom to order the inspections it did.

- The risk that the jury might not accept Plaintiffs' explanation of their intent to cure their default during the period Freedom was assessing multiple property inspections.

- A risk that the Court could strike or limit Plaintiffs' experts. As explained, Plaintiffs hired mortgage industry professionals to explain the standard practices in the industry and to produce a damage model for this action.

Overall, while Plaintiffs continue to believe in their chance of success, there

were significant potential risks that could have caused Plaintiffs to lose some or all

of their claims, or some portion of the class members or their damages. The

Agreement provides relief to *all* borrowers and on good terms.

Addressing Rule 23(e)(2)(C)(i)'s risk of delays on appeal, not much need be

said beyond the fact that the Third Circuit has already demonstrated some interest

in the issues in this specific action, and Freedom would likely appeal any adverse judgment.

**_Risks of maintaining a class action through trial._** Freedom has argued that this case is not suitable for class treatment. Among those arguments, Freedom claimed that *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) meant the Court could not exercise jurisdiction over non-Pennsylvania class members' claims. The Court rejected this argument, ECF No. 33 at 10–16, but noted that *Bristol-Myers Squibb* "left some questions unanswered" and that different courts have reached different conclusions about their ability to exercise jurisdiction over nationwide classes. *Id*. at 13–14. Accordingly, there is a risk that, by the time this case were to reach trial, the Third Circuit or the Supreme Court might have reached a decision requiring this Court to dismiss non-Pennsylvania claims. That would materially affect Plaintiffs' ability to hold a substantial class together.

**_Ability of defendants to withstand a greater judgment._** Freedom—one of the largest mortgage servicers in the United States—likely has the assets to withstand a greater judgment. Freedom's ability or inability to pay more was not a focus of settlement negotiations, and Freedom has not claimed to be financially vulnerable.

**_The range of reasonableness of the settlement fund in light of the best possible recovery, and in light of the attendant risks of litigation._** These two *Girsh* factors

go together and they "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 745 (E.D. Pa. 2013). In evaluating these factors, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Mot. Corp. Litig.*, 55 F.3d at 806.

As discussed above, any given borrower's recovery for *all* property inspection fees paid—even "reasonable" fees—is 35–50%. Given the other risks, a 35–50% refund of *all* fees is a great return for class members.

***Effectiveness of processing claims and providing relief.*** In analyzing this factor, the Court must "scrutinize the method of [notice] processing" and "be alert to whether the . . . process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018).

The claims process in this case is straightforward and streamlined. To make a claim, all borrowers have to do is write their name and address on the postcard, and then sign it. (Ex. A's Ex. A, postcard.) The return card is pre-addressed and postage prepaid. No math is needed—nor anything else, such as certified mail, a sworn affidavit, documentary evidence, etc.

17

Alternatively, borrowers can also go to the settlement web site, check their specific award amount, and then submit a claim there. Or, they can contact the settlement administrator for further help filing a claim.

The Agreement provides that the settlement administrator must send a check to eligible class members promptly after the settlement becomes final. (Ex. A ¶ 11.)

The Court should find that this factor is easily met.

**_Reaction of the class to the settlement._** This _Girsh_ factor cannot be evaluated at this stage, because the class does not yet know about the settlement. However, in Plaintiffs' counsel's experienced opinion, this class will respond strongly, due to the amounts involved and the ease of participating in it.

**_Terms of attorney fee award, including timing._** Plaintiffs' counsel have negotiated a fee amount of up to $791,239, and a costs amount not to exceed $115,000. (Ex. A ¶ 12.) These amounts are to be paid separately from the benefits awarded to the class, such that the fee award will not diminish any class member's award. The Agreement also provides that any fee award is not a condition of the settlement itself. _Id._

The timing for counsel to seek a fees and costs award is 30 days prior to the settlement fairness hearing. *Id.* This is reasonable, since it will afford all class members the right to be heard on that award.

Courts generally defer consideration of the reasonableness of such awards until after preliminary approval and notice is given. *E.g.*, *McRobie v. Credit Protection Assoc.*, No. 5:18-cv-00566, at *5 (E.D. Pa. Nov. 20, 2020). At this stage, the Court should find that the timing of, and the ability for class members to have input into, the award is reasonable and counsels in favor of preliminary approval now.

***Agreements required to be identified under Rule 23(e)(3).*** Other than the Agreement itself, there are none.

### D.      Rule 23(e)(2)(D): Equitable treatment of class members.

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal [for settlement] treats class members equitably relative to each other." No *Girsh* factor appears directly related to Rule 23(e)(2)(D).

This factor is readily established. All class members are being treated the same, in that each borrower who paid a property inspection fee is receiving an identical refund in terms of the percentage paid. Each "first" inspection fee is being returned at the rate of 35%; each "additional" fee is being returned at the rate of 50%. This modest difference does not result in any inequitable treatment, and it is

explained by the degree of perceived misconduct on Freedom's part. That is to say, while Freedom might have validly ordered a single inspection per loan, subsequent inspections would be less reasonable. Plaintiffs allege that Freedom's practices became more unreasonable the more times the same property was inspected. It is fair to refund "additional" fees at a modestly higher rate.

## V.    The Court should conditionally certify the class for settlement.

Rule 23(c)(1) provides that the Court must, at "an early practicable time," determine whether a class should be certified. Plaintiffs ask the Court to certify this class for settlement purposes because Plaintiffs can show that all of the provisions of Rule 23(a) and 23(b)(3) have been met. Those provisions are:

### A.    Rule 23(a)(1): Numerosity.

Freedom indicates there are 74,196 loans whose borrowers are class members, which is sufficiently numerous to make class certification appropriate. *See Stewart v. Abraham*, 275 F.3d 220, 227–28 (3d Cir. 2001) (greater than 40 is a good indicator of numerosity).

### B.    Rule 23(a)(2): Common questions of fact or law.

The commonality inquiry is met when common questions "generate common answers 'apt to drive the resolution of the litigation.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It is satisfied when the named plaintiffs

share "at least one question of fact or law with the grievances of the prospective class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

That test is met. The Gresses and each class member has paid at least one property inspection fee on a residential mortgage. There are common questions of fact and law that apply to all of their claims. Chief among them are: Does Freedom's typical mortgage contract—a standard form applicable to all borrowers—permit Freedom to assess property inspection fees in the manner it has? And, has Freedom acted reasonably in ordering property inspections of borrowers?

### C.     Rule 23(a)(3): Typicality.

There is "a low threshold" in this Circuit for the typicality inquiry. *Newton*, 259 F.3d at 183–84. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established . . . ." *Id*. That is the case here.

Further, the Gresses' claims are typical of all class members. They were assessed and paid four property inspection fees, like many other borrowers. There is nothing unusual about the Gresses; they hold the same claims as other class members; there are no defenses specifically applicable only to them.

### D.    Rule 23(a)(4): Adequate representation.

This rule "tests the qualifications of class counsel and the class

representatives. It also aims to root out conflicts of interest within the class to

ensure that all class members are fairly and adequately represented in negotiations."

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.2d 410, 428 (3d Cir.

2016).

As described above and in counsel's declarations, Exs. B and C, the Plaintiffs

have been adequate stewards of this class, and have guided this litigation to a

favorable resolution. There are no conflicts between the interests of the Gresses and

the class as a whole.

### E.    Rule 23(b)(3): Predominance and superiority of adjudication as a class.

Rule 23(b)(3) requires the Plaintiffs to demonstrate that the common

questions of law and fact predominate over issues affecting only individuals. As

discussed above, the Plaintiffs have alleged that Freedom's computers order

property inspections on an automated basis, without taking into account

circumstances which would make those inspections unreasonable. In settlement

context, where all borrowers will receive a refund *regardless* of individual

circumstances, these common questions involving Freedom's policies *do*

predominate over any questions affecting only individuals or their claims. In any

event, "the presence of individual questions does not *per se* rule out a finding of predominance." *In re Prudential*, 148 F.3d at 315.

Rule 23(b)(3) also requires the Plaintiffs to demonstrate that a class action is a superior means of adjudicating the claims. *Gates v. Rohm and Haas Co.*, 248 F.R.D 434, 443–44 (E.D. Pa. 2008) (analyzing settlement under rule). Most significantly, as the Court can see from the values presented above, no one class member's claim warrants individual treatment in court. No reasonable borrower would file and pursue a suit over, at most, a few hundred dollars. Without class treatment, no class member would likely have any relief at all. Where the dollar value is low relative to the costs of litigating, this factor may be met. *Id.*; *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 316722, at *3–4 (E.D. Pa. Jan. 24, 2019).

For similar reasons, Rule 23(b)(3)(A)-(D) are also met. (A) Class members, who stand to recover awards with a median value of $12.75, do have not a significant interest in controlling their individual lawsuits. (B) The Plaintiffs are unaware of any other litigation involving any class member and these same claims. (C) Concentrating this litigation in this forum—and resolving it, as Freedom voluntarily agreed to do—is desirable in light of the strong policy in favor of finality and efficiency. (D) Finally, "manageability issues are not relevant here because" this is a settlement class. *Gates*, 248 F.R.D. at 444.

Accordingly, Plaintiffs have met the express requirements of Rule 23(b)(3).

**F.      Rule 23(b)(3): Inherent ascertainability requirement.**

The Third Circuit, perhaps uniquely among its peers, also imposes the "implicit requirement" of ascertainability of a Rule 23(b)(3) class. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). This "inquiry ensures that a proposed class will actually function as a class." *Id.* The inquiry is satisfied if plaintiffs offer a "reliable and administratively feasible" means of identifying class members. *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

In this case, class membership is perfectly ascertainable. As a financial institution, Freedom has maintained records of each borrower whom it charged an inspection fee. These records extend throughout the class period.

**VI.   The Court should appoint Plaintiffs' counsel as class counsel.**

The Court should appoint the undersigned lawyers as class counsel. Rule 23(g) gives four factors for evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i). All of these factors tip in favor of appointing the undersigned attorneys as class counsel.

As shown above, all three firms have adequately represented the class. Each firm has extensive experience in consumer class actions, as demonstrated by the numerous times the firms and their attorneys have been appointed class counsel. (Exs. B & C.) Finally, each firm litigates in state and federal courts across the nation and have more than sufficient resources to represent this class. *Id.*

## VII.   The Court should approve the proposed notice plan.

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." As shown, approval of the settlement under Rule 23(e)(2) and certification of the class for settlement purposes are both appropriate (and hopefully likely). Thus, the Plaintiffs ask the Court to direct notice to class members.

Regarding the form and manner of notice, Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable

effort." The rule also provides that notice can be given by U.S. mail or electronically. It also requires that class notices clearly and concisely state, in plain language: the nature of the action; the definition of the certified class; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney; that the court will exclude any member who requests it; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed Agreement contains exhibits—draft notices—which are fully compliant with this rule. Ex. A is the form of a postcard that would go to each class member, by U.S. Mail. Then, a "reminder" notice would go by e-mail to any class member who does not respond to Ex. A. If an e-mail address is available, Ex. B would be sent. If an e-mail address is not available, Ex. C would be sent. All of these notices also would provide the settlement administrator's web site, phone number, and a claim number for looking up class members' information and filing a claim. These notices comply with the content requirements of Rule 23(c)(2)(B).

The proposed manner of sending also complies with Rule 23(e)(1)(B)'s command to "direct notice in a reasonable manner." Freedom will provide each class member's last known address, and the settlement administrator will check that address against the U.S. Postal Service's change of address database. (Ex. A ¶¶

26

1(k), 5.) These addresses should be reliable—they are generally tied to the mortgaged properties themselves, and thus have been validated through use and care.

Federal courts routinely approve settlements where a postcard and a web site constituted the notice plan. *E.g.*, *Udeen v. Subaru of Am., Inc.*, No.18-17334, 2019 WL 4894568, at *7 (D.N.J. Oct. 4, 2019) ("Under the parties' proposed notice plan, the Settlement Administrator shall mail to the last known addresses of class members by first-class mail short-form postcard notice, which will direct class members to the settlement website where they may view the long-form notice . . . Rule 23 and due process are both satisfied by the notice forms here."); *Boeynaems v. L.A. Fitness Int'l, LLC*, No. 10-2326, 2013 WL 12147637, at *2 (E.D. Pa. Sept. 27, 2013); *Giercyk v. Nat'l Union fire Ins. Co. of Pittsburgh, PA*, No. 13-6272, 2016 WL 7209649, at *3 (D.N.J. Oct. 13, 2016); *Teh Shou Kao v. CardConnect Corp.*, No. 16-5707, 2021 WL 698173, at *4 (E.D. Pa. Feb. 23, 2021).

The parties' proposed Agreement goes even further than that, though, because it also includes a second "reminder" notice, via e-mail—which has the advantage of being via a different medium—or via U.S. Mail again if e-mail isn't available. This provides additional assurances of due process to all class members.

Accordingly, the Plaintiffs ask the Court to approve the notice plan designated in the Agreement and the draft notices attached to the Agreement.

## VIII.  Conclusion and relief sought.

Plaintiffs respectfully ask the Court to:

(1)     Preliminarily approve the proposed Agreement.

(2)     Certify the proposed class described in the Agreement for purposes of settlement.

(3)     Name the Plaintiffs as the class representatives, and name their undersigned counsel as class counsel.

(4)     Order that notice be issued to the class under the terms of the Agreement, including the form and procedure set out there.

(5)     Find that such notice is the best notice practicable under the circumstances.

(6)     Enter the proposed order (Ex. D).

(7)     Schedule dates for the parties and class members as set out in the proposed order.

(8)     Set a hearing date for the final approval of the Agreement and hearing Plaintiffs' motion for an award of attorneys' fees and costs.

Dated: September 2, 2021                 Respectfully submitted,

D. Greg Blankinship (admitted *pro hac vice*)
Todd S. Garber (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway Suite 900
White Plains, NY 10601
Telephone: (914) 298-3290
Fax: (914) 908-6709
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

**LEVIN, PAPANTONIO, RAFFERTY,**
**PROCTOR, BUCHANAN, O'BRIEN,**
**BARR, & MOUGEY, P.A.**
Matthew D. Schultz (admitted *pro hac vice*)
William F. Cash III (admitted *pro hac vice*)
316 South Baylen St.
Pensacola, Florida 32502
Telephone: (850) 435-7059
mschultz@levinlaw.com
bcash@levinlaw.com

**CARLSON LYNCH KILPELA &**
**CARPENTER, LLP**
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com

*Attorneys for Plaintiffs*

29

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.8(b), I certify that this brief is 5,909 words long, excluding the cover page, table of contents, table of authorities, signature block, and certificates.

William F. Cash III

## CERTIFICATE UNDER LR 7.01

Defendant has concurred in this motion and the relief sought. Defendant reviewed this motion in full prior to filing, and Defendant is bound by the settlement Agreement described in this motion.

William F. Cash III