**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL J. GRESS** and **BRANDY L. GRESS**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-cv-00375-RDM (Hon. Robert D. Mariani) |
| v. | ) ) | |
| **FREEDOM MORTGAGE CORPORATION**, | **)** ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

\#

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 1

BACKGROUND OF THE LITIGATION ............................................ 4

SUMMARY OF THE SETTLEMENT ................................................ 6

ARGUMENT ................................................................................... 7

I.    STANDARD FOR APPROVAL OF A CLASS ACTION
      SETTLEMENT .......................................................................... 7

      A.    Plaintiffs and Counsel Have More Than Adequately
            Represented The Class ................................................... 10

      B.    The Settlement Agreement Was Negotiated At Arm's
            Length. ......................................................................... 11

      C.    The Litigation Is Complex And Will Be Expensive And
            Lengthy. ....................................................................... 12

      D.    The Current Stage Of The Instant Litigation And The
            Discovery
            That Has Occurred Favor Final Approval ...................... 13

      E.    Plaintiffs Face Hurdles In Establishing Liability............ 14

      F.    Plaintiffs Face Substantial Hurdles In Proving Damages......... 14

      G.    Maintaining The Class Action Through Trial May Be
            Challenging. ................................................................. 15

      H.    The Settlement Agreement Facilitates Claims Submission
            And Processing And The Distribution Of Benefits To The
            Settlement Class............................................................ 16

      I.    Class Counsel Fees Were Separately Negotiated And Would
            Not Diminish The Benefits To The Settlement Class .......... 17

      J.    There Are No Agreements To Identify Pursuant To Rule
            23(e)(3)........................................................................ 18

      K.    The Settlement Agreement Treats Class Members Equitably
            Relative To Each Other.................................................. 18

i

L.    The Reaction Of The Class Has Been Overwhelmingly Positive. ....................................................................18

M.    Freedom's Ability To Withstand A Greater Judgment Does Not Per Se Make The Settlement Unfair .........................................20

N.    The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation ...................................................................20

II.    NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER ....................................................................21

III.    THIS COURT SHOULD CERTIFY THE CLASS. ...........................22

CONCLUSION .........................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Bolger,*
  2 F.3d 1304 (3d Cir. 1993)......................................................................... 18

*Bellum v. Law Offs. of Frederic I. Weinberg & Assocs., P.C.,*
  No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 3. 2016).................................. 11

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773 (2017) ............................................................................... 15

*In re Gen. Motor Corp. Litig.,*
  55 F.3d 768 (3d Cir. 1995)....................................................................Passim

*Ferrington v. McAfee, Inc.,*
  No. 10-01455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012)............................... 19

*Girsh v. Jepson,*
  521 F.3d 153 (3d Cir. 1975)...................................................................... 8, 9

*Halley v. Honeywell Int'l, Inc.,*
  861 F.3d 481 (3d Cir. 2017)....................................................................... 20

*In re Baby Prods.,*
  708 F.3d 163 (3d Cir. 2013).......................................................................... 8

*In re Cendant Corp.,*
  264 F.3d 201 (3d Cir. 2001).......................................................................... 8

*In re Comcast Corp.,*
  333 F.R.D. 364 (E.D. Pa. 2019)................................................................. 8, 19

*In re New Jersey Tax Sales Certificates Antitrust Litig.,*
  750 Fed. Appx. 73 (3d Cir. 2018)................................................................. 11

*In re Prudential Ins. Co. Litig.,*
  148 F.3d 283 (3d Cir. 1998)........................................................................ 19

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)............................................................................. 8, 20

*Rossini v. PNC Fin. Serv. Grp.*,
   No. 18-1370, 2020 WL 3481458 (W.D. Pa. June 26, 2020) ............................... 19

*Somogyi v. Freedom Mortgage Corp.*,
   495 F. Supp. 3d 337 (D.N.J. 2020) ..................................................................... 12

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................ Passim

## **Other Authorities**

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and
Plain Language Guide ............................................................................................22

Plaintiffs Michael J. Gress and Brandy L. Gress submit this motion before the Court and seek final approval of a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23(e).

## **INTRODUCTION**

After hard-fought litigation, which included pre-suit investigation, motion practice, an interlocutory appeal, extensive fact and expert discovery, and a lengthy arm's length settlement negotiation before a highly-regarded JAMS mediator, Plaintiffs and Defendant Freedom Mortgage Corporation ("Freedom") have agreed to a settlement that will resolve the Action. Class Members who submitted a claim will receive between 35 and 50 percent of their actual damages. This is a great result for Class Members.

In this action, Plaintiffs allege that Defendant unlawfully charged fees to Plaintiffs and Class Members for unnecessary property inspections in violation of their mortgage agreements and consumer protection law. Freedom charged Plaintiffs four times to have their home inspected in order to provide Freedom peace of mind that the home was occupied and being maintained. However, Plaintiffs were in regular communication with Freedom and made efforts to stay current on their loan, including by making partial payments. Plaintiffs assert that repeat property inspections, where a property is known to be occupied, are unreasonable and unnecessary and therefore a breach of the terms of Freedom's

1

standard mortgage and in contravention of consumer protection laws, and constitute consumer fraud.

Discovery and motion practice have been extensive, including a motion to dismiss and an interlocutory appeal. Discovery included the propounding of, and responses to, multiple sets of document requests and interrogatories, as well as the production and review of thousands of documents and substantial computer data. Plaintiffs also took the deposition of a Freedom corporate representative. Plaintiffs also retained mortgage industry experts to explain when, and under what circumstances, property inspections are, and are not, needed, as well as how class membership and damages can be determined on a class-wide basis through analysis of computer data obtained from Defendants.

Near the conclusion of discovery, the parties entered into arm's length negotiations, including mediation before the Hon. Jeff Kaplan (Ret.), that led to the Settlement Agreement presented to the Court. It resolves all claims asserted in the action against Defendant with respect to a Settlement Class consisting of the following:

> (a)    All borrowers in the United States whose Mortgages were or are serviced by Freedom and who paid money to Freedom for fees on property inspections conducted on their property due to the borrower defaulting or being delinquent on their Mortgage ("Default Property Inspections"), between March 5, 2013 and December 31, 2020. The settlement does not apply to: (a) fees for Default Property Inspections assessed by Freedom that were not paid by the borrower; (b) fees for Default Property Inspections that were refunded to the borrower; (c)

2

fees for Default Property Inspections paid by third-parties; or (d) borrowers who provided Freedom with a release of claims which cover the claims in this case, including where the release was provided directly or through a class representative as part of another class action or class action settlement.

The Settlement Agreement provides substantial benefits to the Settlement Class.  Indeed, each Class Member who submitted a claim will receive 35% of the first fee paid and 50% of each additional fee paid.  *See* Class Action Settlement Agreement, ¶ 9 ("Settlement Agreement") (attached as Exhibit A to the Declaration of D. Greg Blankinship (the "Blankinship Dec.").  This Court granted preliminary approval of the Settlement on September 17, 2021, certifying a class for settlement purposes and authorizing the dissemination of class notice.  ECF No. 72.

Plaintiffs respectfully request that this Court now grant final approval.  First, the Settlement offers substantial benefits and avoids the delay, expense, and risks inherent in litigating class claims through trial and appeal.  The Settlement's value is estimated at up to $2,700,885.74, exclusive of the request for attorneys' fees and expenses, the cost of settlement administration, and service awards.  Second, the Settlement was the product of arm's length negotiations aided by an independent mediator and conducted by experienced counsel who obtained extensive formal and informal discovery and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages

incurred by the Class, and the fairness of the Settlement.  Third, the positive

response from the Class argues in favor of approving the Settlement.  As of

January 10, 2022, only three Class Members (or .0004% of the total class) opted

out and there have been zero objections to the Settlement.  The deadline to opt out

and object has passed.  Thus, Plaintiffs hereby apply for the entry of an order that

will certify the proposed Class and finally approve the Settlement.

## <u>BACKGROUND OF THE LITIGATION</u>

On March 5, 2019, Plaintiffs filed their complaint for the instant putative

class action against Freedom (the "Complaint").  ECF No. 1.  On April 17, 2019,

Freedom moved to dismiss the Complaint.  ECF No. 21.  The motions were fully

briefed.  ECF Nos. 21, 26-27.

On June 26, 2019, the Court granted in part and denied in part Freedom's

motion by dismissing one of Plaintiffs' five claims.  ECF No. 33.  The Court

denied Freedom's motion to dismiss Plaintiffs' breach of contract claim, claims

under various state consumer protection statutes on behalf of the multi-state

putative class, a claim for the violation of the Pennsylvania Fair Credit Extension

Uniformity Act, and an unjust enrichment claim.  ECF No. 33.  Defendant

successfully petitioned this Court to certify an interlocutory appeal to the Third

Circuit.  ECF No. 41.  The Third Circuit subsequently rejected that appeal.  *Gress

v. Freedom Mortgage Corp.*, No. 19-8035, ECF No. 16 (3d Cir. Feb. 12, 2020).

On July 10, 2019, Freedom filed its Answer to the Complaint.  ECF No. 34.

Plaintiffs' counsel conducted thorough discovery and undertook an extensive investigation relating to the claims and the underlying events and transactions alleged in the pleadings.  *See* Blankinship Dec. ¶ 2.  The parties engaged in substantial discovery practice, including production of documents, multiple sets of interrogatories, a deposition of a corporate representative of Freedom, and other discovery practice.  *See id*. ¶ 3.  The parties had vigorous disputes over the scope and schedule of discovery productions.

Plaintiffs retained three mortgage industry professionals to analyze millions of records to explain when, and under what circumstances, property inspections are, and are not, needed, as well as how class membership and damages can be determined on a class-wide basis through analysis of computer data obtained from Defendant.  *See id.* ¶ 4.

The parties reached their Agreement during two all-day mediation sessions with the Hon. Jeff Kaplan (Ret.) in December 2020 and January 2021.  *See id.* ¶¶ 5-7.  While the parties agreed to terms in a memorandum signed following the mediation, it took additional months to finalize the settlement agreement, including notice provisions, which were the subject of extensive negotiations between the parties.  *See id* ¶¶ 8.  The parties did not negotiate attorneys' fees and costs until after they finalized their agreement as to the settlement benefit for the class.  *See id*

¶ 9.

This Court approved the parties proposed notice plan on September 17, 2021.  ECF No. 72.  Accordingly, on October 15, 2021, the claims administrator mailed postcard notice to all 74,952 Class Members.  Declaration of Class Action Settlement Administrator ("Administrator Dec."), ¶ 3.  On November 16, 2021**,** the claims administrator also mailed or emailed a reminder notice to all class members who had not yet made a claim.  *Id.* ¶ 9.  5,810 Class Members submitted timely claims, representing a claims rate of 7.8 percent.  *Id.* ¶ 11.  Only three Class Members opted-out of the settlement and no Class Members objected to the settlement.  *Id.* ¶ 10.

## SUMMARY OF THE SETTLEMENT

Under the Settlement Agreement, Freedom, through the Claims Administrator, shall pay Approved Claimants up to an estimated $2,700,885.74, as follows:

    (a)    Each Approved Claimant shall be paid 35% of the amount of money actually paid by the Class Member to Freedom and not refunded by Freedom for the Property Inspection Fees triggered by the first Property Inspection conducted on the property securing the Class Member(s)' Mortgage serviced by Freedom;

    (b)    Each Approved Claimant shall be paid 50% of the amount of money actually paid by the Class Member(s) to Freedom and not refunded by Freedom for the Property Inspection Fees triggered by any second and any subsequent Property Inspections conducted on the property securing Class Member(s)' Mortgage serviced by Freedom.

6

Settlement Agreement ¶ 9.

Freedom has agreed not to oppose a request for attorneys' fees and expenses of $791,239.00 and $115,000.00, respectively, as well as a request for a joint Service Award to the Class Representatives of up to $5,000.00. *Id.* ¶¶ 12-13. Freedom shall pay any such award separately and apart from payments to the Settlement Class. *Id.* Freedom has also agreed to separately pay for Settlement Administration Costs. *Id.* ¶ 5.

In return for making these settlement benefits available to all Settlement Class Members, the Settlement Class Members' claims against Freedom will be dismissed with prejudice and all Settlement Class Members (other than the three members who opted-out of the Settlement Class) will release and be permanently barred from pursuing any claims in accordance with the Settlement Agreement. *Id.* ¶ 15.

## **ARGUMENT**

## I.    **STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT.**

Strong judicial policy favors the settlement of class actions. *See In re Gen. Mot. Corp. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation[.]").  There is an "overriding public interest in settling class action litigation, and it should therefore

be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir.
2004).

Courts assess proposed class action settlements to determine whether they
are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A settlement enjoys
an "initial presumption of fairness" where "(1) the settlement negotiations occurred
at arm's length; (2) there was sufficient discovery; (3) the proponents of
the settlement are experienced in similar litigation; and (4) only a small fraction of
the class objected." *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp.*,
264 F.3d 201, 232 n.18 (3d Cir. 2001)). A court "should be 'hesitant to undo an
agreement that has resolved a hard-fought, multi-year litigation.'" *In re Comcast
Corp.*, 333 F.R.D. 364, 379 (E.D. Pa. 2019) (quoting *In re Baby Prods.*, 708 F.3d
163, 175 (3d Cir. 2013)).

When evaluating the fairness and adequacy of a proposed class settlement,
courts in this Circuit are guided by the factors enunciated in *Girsh v. Jepson*, 521
F.3d 153, 157 (3d Cir. 1975). Those factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the
> reaction of the class to the settlement; (3) the stage of the proceedings
> and the amount of discovery completed; (4) the risks of establishing
> liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class action through the trial; (7) the ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund to
> a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.

The recent adoption of Rule 23(e)(2) does not displace the *Girsh* factors. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note.  Rather, it "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  *Id.*  These "core concerns" are:

> (A) The class representatives and class counsel have adequately represented the class;
>
> (B) The proposal was negotiated at arm's length;
>
> (C) The relief provided for the class is adequate, taking into account:
>
>> i.   the costs, risks, and delay of trial and appeal;
>>
>> ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>>
>> iii. the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> iv.  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) The proposal treats class members equitably relative to each other.

Consideration of Rule 23(e)(2)'s "core concerns" and the *Girsh* factors demonstrate that the Settlement Agreement is fair, reasonable, and adequate, and therefore should be approved.

9

**A.    Plaintiffs and Counsel**
**Have More Than Adequately Represented The Class.**

Plaintiffs have more than adequately represented the Settlement Class,

satisfying Rule 23(e)(2)(A).  But for the courage and initiative of Plaintiffs in

bringing this lawsuit, the Settlement Agreement benefitting the Settlement Class

would not have been reached.  Plaintiffs expended considerable time and effort in

prosecuting this case.  *See* Declaration of William F. Cash III ("Cash Dec.") ¶¶ 13-

15.  Plaintiffs were highly involved in the conduct of this litigation, assisting

Plaintiffs' Counsel in preparing the complaint, analyzing their own claims,

gathering documents, and preparing strategy.  *Id.*  Plaintiffs were also involved

with Plaintiffs' Counsel during the mediation sessions to provide Plaintiffs'

Counsel with direction and approval.  *Id.*

With respect to Plaintiffs' Counsel, "the focus . . . is on the actual

performance of counsel acting on behalf of the class."  Fed. R. Civ. P. 23(e)(2)(A)

advisory committee's note.  Here, the team of Finkelstein, Blankinship, Frei-

Pearson & Garber, LLP, and Levin, Papantonio, Rafferty, Proctor, Buchanan,

O'Brien, Barr, & Mougey, P.A. extensively investigated Plaintiffs' claims and

engaged in motion and discovery practice before entering into the Settlement

Agreement.  Blankinship Dec ¶¶ 2-4; Cash Dec. ¶¶ 5-8.  Prior to filing this action,

Plaintiffs' Counsel exhaustively investigated Plaintiffs' claims by obtaining copies

of their statements, interviewing them, and confirming they paid property

10

inspection fees which they considered unreasonable.  Blankinship Dec ¶ 2.

Plaintiffs' Counsel engaged in substantial discovery practice, including

productions of documents, and a deposition of Freedom.  *See id.* ¶ 3.  Plaintiffs'

Counsel engaged the services of a team of experts in the industry, who analyzed

discovery materials produced and tendered a preliminary opinion.  *See id.* ¶ 4.

Plaintiffs' Counsel prepared for and engaged in arm's length settlement

negotiations with Freedom, including mediation.  *See id.* ¶¶ 5-7.  Thus, Plaintiffs'

Counsel fully appreciated the strengths and weakness of the action before entering

into the Settlement Agreement.

### B.    The Settlement Agreement Was Negotiated At Arm's Length.

The Parties negotiated the Settlement Agreement at arms-length and with the

participation of an independent mediator, satisfying Rule 23(e)(2)(B).  "Where

negotiations were conducted 'at arms' length by experienced counsel after

adequate discovery, . . .  there is a presumption that the results of the process

adequately vindicate the interests of the absentees.'"  *In re New Jersey Tax Sales*

*Certificates Antitrust Litig.*, 750 Fed. Appx. 73, 77 (3d Cir. 2018) (quoting *In re*

*Gen. Mot. Corp.*, 55 F.3d at 796).  "[T]he participation of an independent mediator

in settlement negotiations virtually [e]nsures that the negotiations were conducted

at arm's length and without collusion between the parties."  *Bellum v. Law Offs. of*

*Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6

(E.D. Pa. Sept. 3. 2016).

Here extensive discovery and motion practice informed settlement negotiations, including mediation before an eminently qualified mediator.  The Settlement Agreement was negotiated at arms-length and supports the finding that the settlement is fair and reasonable.

### C.    The Litigation Is Complex And Will Be Expensive And Lengthy.

Rule 23(e)(2)(C)(i) and *Girsh* factors numbers one, three, four, five, and six consider the costs, risks, and delay of trial and appeal.  As such, they will be discussed together in turn.

The Settlement Agreement provides substantial monetary benefits to the Settlement Class, while avoiding significant expenses and delays attendant to discovery, class certification briefing, motion practice related to summary judgment, and potential trial and appeal.  "[A]bsent a settlement it is likely the class could not hope to recover any money for years. . . .  The fact that the settlement provides prompt relief to the class . . . weights in favor of approving the settlement."  *Somogyi v. Freedom Mortgage Corp.*, 495 F. Supp. 3d 337, 350 (D.N.J. 2020).

The extent of litigation, including motion practice, discovery disputes, an interlocutory appeal, and significant discovery demonstrates the expansive nature of this litigation.  If the Parties did not enter into this Settlement Agreement,

12

litigation would likely move forward with additional discovery, motion practice for class certification and summary judgment, trial, and potential appeal.  The length and expense of further stages of litigation in this action is substantial.

**D.    The Current Stage Of The Instant Litigation
And The Discovery That Has Occurred Favor Final Approval.**

Before agreeing on a settlement, the parties aggressively litigated this action. Thus, the legal issues in this action have been thoroughly vetted through discovery and motion practice.  Motion practice involved a motion to dismiss and an interlocutory appeal.  Discovery included the propounding of, and responses to, multiple sets of document requests and interrogatories, as well as the production and review of thousands of documents and substantial computer data comprising millions of records.  Plaintiffs deposed a corporate representative of Freedom. Plaintiffs retained mortgage industry experts to explain when, and under what circumstances, property inspections are, and are not, needed, as well as how class membership and damages can be determined on a class-wide basis through analysis of computer data obtained from Defendant.  Thorough examination of this data required three mortgage industry professionals and more than $100,000 in expert fees.  Settlement in this action eliminates the necessary and substantial expenses to thoroughly litigate Plaintiffs' claims.

E.    **Plaintiffs Face Hurdles In Establishing Liability.**

The Settlement Agreement should be approved because Plaintiffs face hurdles in establishing liability.  Plaintiffs alleged that borrowers were required to pay for useless property inspections, yet proving this allegation is not a foregone conclusion.  Defendant continues to vigorously defend against these claims. Plaintiffs still face the risk that the Court may ultimately find for Freedom in construing the contract provisions of the mortgages at issue or that Freedom may establish that the property inspections ordered were reasonable under the circumstances.  Plaintiffs also face the risk that a jury may not accept Plaintiffs' explanation of their intent to cure their mortgage default while Freedom assessed multiple property inspections or that the Court could strike or limit Plaintiffs' experts.

Plaintiffs have strong convictions regarding the chance of success of their claims, but significant potential risks remain that Plaintiffs may lose some or all of their claims.  The Settlement Agreement presents substantial relief to all borrowers without the uncertainty of litigation.

F.    **Plaintiffs Face Substantial Hurdles In Proving Damages.**

In order to prove damages on a class-wide basis, Plaintiffs must prove that Freedom's property inspections are not necessary in the instances identified by their liability expert and that the Settlement Classes suffered actual damages as a

14

proximate result.  To do so, Plaintiffs face the extensive task of processing millions of records of data to prove Plaintiffs' claims.  Thorough examination of this data (which is not complete) required three mortgage industry professionals and more than $100,000 in expert fees.  Although Plaintiffs are confident that the methodology and analysis proposed by their experts would survive scrutiny, this undertaking is substantial.

## G.    Maintaining The Class Action Through Trial May Be Challenging.

Plaintiffs are confident in their ability to maintain this action as a class through trial, but still face the hurdle of class certification.  Plaintiffs recognize that there are substantial challenges in doing so.  "[T]he prospects for obtaining certification have a great impact on the range of recovery[.]"  *In re Gen. Mot. Corp.*, 55 F.3d at 817.  Freedom will oppose Plaintiffs' class certification motion if the Settlement Agreement is not approved.  If the motion is granted, Freedom will likely move to decertify the class.  Even if Plaintiffs clear all these hurdles, they still have to prove liability and damages at trial.

Freedom has argued that this case should not be maintained as a class action based on its interpretation of *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), that the Court could not exercise jurisdiction over non-Pennsylvania class members' claims.  The Court rejected this argument, but noted that *Bristol-Myers Squibb* "left some questions unanswered" and that different

15

courts have reached different conclusions about their ability to exercise jurisdiction over nationwide classes.  ECF No. 33 at 10−16.  There remains the risk that the Third Circuit or the Supreme Court may reach a decision requiring this Court to dismiss non-Pennsylvania claims.  That would materially affect Plaintiffs' ability to hold a substantial class together and would inhibit the strength of Plaintiffs' claims.

**H.**     **The Settlement Agreement Facilitates Claims Submission And Processing, And The Distribution Of Benefits To The Settlement Class.**

The Settlement Agreement provides an effective method of distributing relief to the Class and meets Rule 23(e)(2)(C)(ii).  In analyzing this factor, the Court must "scrutinize the method of [notice] processing" and "be alert to whether the . . . process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018).  The Settlement Agreement provided a convenient and efficient way of submitting and processing claims.  The First Notice included a tear-off, postage-prepaid postcard which could be mailed to the Settlement Administrator to make a claim.  Class Members could also submit claims through the Settlement Website, or by mail.  *See* Settlement Agreement ¶ 10.  Class Members could use the unique identifying number assigned by the mailed notices to automatically populate the online claim form, and could use the Settlement Website to determine the estimated value of their claim.  *Id.*  The postcard claim

form and the Settlement Website claim submission feature also allowed Class

Members to update their mailing address. *Id.*

The Settlement Agreement also provides for an efficient way of distributing

payments to Approved Claimants. Freedom will transfer sufficient funds to pay

the aggregate value of all Valid Claims into a federally-insured depository account

maintained by the Settlement Administrator. *Id.* ¶ 11. Within one-hundred and

fifteen days after the funding of the account, the Settlement Administrator will

draw and mail checks payable to the Approved Claimants. *Id.*

## I.    Class Counsel Fees Were Separately Negotiated
##       And Would Not Diminish The Benefits To The Settlement Class.

The Settlement Agreement's terms of award of attorneys' fees meets the

requirements of Rule 23(e)(2)(C)(iii). Pursuant to the Settlement Agreement,

Freedom has agreed not to oppose a request for attorneys' fees and expenses of up

to $791,239.00, and $115,000.00, respectively (collectively, "Class Counsel

Fees"). *See* Settlement Agreement ¶ 12. The Class Counsel Fees will be paid

separately by Freedom and will not diminish the benefits to the Settlement Class.

*Id.* Moreover, the parties negotiated Class Counsel Fees only after reaching an

agreement on the substantive terms of the Settlement. *See* Blankinship Dec. ¶ 9.

In fact, the Settlement Agreement provides that any fee award is not a condition of

the settlement itself. *See* Settlement Agreement ¶ 12.

17

**J.**    **There Are No Agreements To Identify Pursuant To Rule 23(e)(3).**

Parties seeking the approval of a settlement are required to identify any

agreement made in connection with the proposed settlement.  *See* Fed. R. Civ. P.

23(e)(2)(C)(iv).  There are no such agreements.

**K.**    **The Settlement Agreement**
**Treats Class Members Equitably Relative To Each Other.**

Class Members are treated equitably in this Settlement, satisfying Rule

23(e)(2)(D).  Recovery of their damages is proportional their actual damages.

Each "first" inspection fee is being returned at the rate of 35%; each "additional"

fee is being returned at the rate of 50%.  This modest difference does not result in

any inequitable treatment, and it is explained by the degree of perceived

misconduct on Freedom's part (the first inspection was arguably a reasonable step

to ensure the mortgagees did not abandon the property).  Plaintiffs allege that

Freedom's practices became more unreasonable the more times the same property

was inspected.  It is fair to refund "additional" fees at a modestly higher rate.

**L.**    **The Reaction Of The Class Has Been Overwhelmingly Positive.**

Class Members have demonstrated positive responses to the Settlement,

satisfying the second *Girsh* factor.  "In an effort to measure the class's own

reaction to the settlement's terms directly, courts look to the number and

vociferousness of the objectors."  *In re Gen. Mot. Corp.*, 55 F.3d at 812 (citing *Bell*

*Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993) ("[S]ilence constitutes tacit consent to the agreement.")).

Here, no Class Members objected to the settlement and Class Members' response to the Settlement was overwhelmingly positive. *See* Administrator Dec., ¶¶ 10-11. As of January 10, 2022, only three Class Members opted out. *Id.* ¶ 10. "The extremely low percentage of objectors and opt-outs is well within the percentage of opt-outs and objectors that this Circuit has previously held favors approval of a settlement under this factor." *In re Comcast Corp.*, 333 F.R.D. at 381; *c.f.*, *In re Prudential Ins. Co. Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (affirming the district court's conclusion that the reaction of the class was favorable when 19,000 out of 8 million of the class members opted out and 300 objected). The reaction of the Class weighs heavily in favor of approving the Settlement.

The claims rate also supports approval of the settlement. Here, as of January 6, 2022, 5,810 Class Members or approximately 7.7% of the Class have submitted claims. *See* Administrator Dec., ¶ 11. Indeed, courts have approved claims-made class settlements where the claims rate was substantially lower. *See, e.g.*, *Rossini v. PNC Fin. Serv. Grp.*, No. 18-1370, 2020 WL 3481458, at *14 (W.D. Pa. June 26, 2020) (approving settlement with claims rate of 4%); *Ferrington v. McAfee, Inc.*, No. 10-1455, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) ("prevailing

19

rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.").

The pittance of opt-outs and lack of any objections to date, coupled with a claims rate substantially higher than typical of consumer class actions, weighs heavily in favor of the Settlement.

## M. Freedom's Ability To Withstand A Greater Judgment Does Not *Per Se* Make The Settlement Unfair.

While Freedom, as one of the largest mortgage servicers in the United States, likely has the assets to withstand a greater judgment, this does not suggest that the settlement is unfair. The Defendant's "ability to pay a higher amount [is] irrelevant to determining the fairness of the settlement." *In re Warfarin*, 391 F.3d at 538.

## N. The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.

The Settlement Agreement satisfies the eighth and ninth *Girsh* factors regarding the range of reasonableness of the settlement fund. The Court should consider whether the settlement is reasonable because it "yields immediate and tangible benefits, and it is reasonable in light of the best possible recovery and the attendant risks of litigation – little or no recovery at all." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 490 (3d Cir. 2017). The Court must "guard against

demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Mot. Corp.*, 55 F.3d at 806.

Any given borrower's recovery for all property inspection fees paid, even "reasonable" fees, is between 35-50 percent. This recovery represents a substantial settlement and a great return for Class Members.

Without the Settlement Agreement, if Freedom prevails on the motion for class certification, on a motion for summary judgment, at trial, or on appeal, Class Members would recover nothing. Given these possibilities, the generous benefits available under the Settlement Agreement are well within, if not, better than, the range that courts have traditionally found to be fair and adequate under the law. That the Settlement Agreement provides for prompt payment to claimants is further reason to approve the settlement.

## II.    <u>NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER.</u>

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance

21

through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court approved the form and content of the proposed First and Second Notices and approved the Parties' proposal to distribute both Notices.  The Court further found that the Parties' proposal regarding class notice to potential class members constituted the best notice practicable under the circumstances and complies fully with the notice requirements of due process and Fed. R. Civ. P. 23.

Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, the Settlement Administrator mailed the Notices to Class Members on October 15, 2021.  *See* Administrator Dec., ¶ 5.

The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice to more than 96% of the Settlement Class.  *See* Administrator Dec., ¶ 5**.**  Accordingly, this Court should grant final approval of the Settlement.

## III.    THIS COURT SHOULD CERTIFY THE CLASS.

Plaintiffs moved to preliminarily certify the Class for settlement purposes,

and the Court granted the motion. For the reasons stated in Plaintiffs'

Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Action Settlement, this Court should certify the Class for

settlement purposes.

## **CONCLUSION**

Plaintiffs respectfully request that the Court finally approve the Settlement

Agreement and enter the proposed order.

Dated:  January 11, 2022        Respectfully submitted,

By:  */s/ D. Greg Blankinship*

D. Greg Blankinship (admitted *pro hac vice*)
Todd S. Garber (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway Suite 900
White Plains, New York 10601
Telephone: (914) 298-3290
Fax: (914) 908-6709
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

23

Matthew D. Schultz (admitted *pro hac vice*)
William F. Cash III (admitted *pro hac vice*)
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR, & MOUGEY, P.A.**
316 South Baylen Street Suite 600
Pensacola, FL 32502
(850) 435-7140
mschultz@levinlaw.com
bcash@levinlaw.com

Gary F. Lynch
**CARLSON LYNCH KILPELA &
CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com

*Counsel for Plaintiffs*

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.8(b), I certify that this brief is 4,988 words long, excluding the cover page, table of contents, table of authorities, signature block, and certificates.

D. Greg Blankinship

## CERTIFICATE UNDER LR 7.01

Defendant has concurred in this motion and the relief sought.  Defendant reviewed this motion in full prior to filing, and Defendant is bound by the Settlement Agreement described in this motion.

D. Greg Blankinship